IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ESTECH SYSTEMS, INC., | CIVIL ACTION NO. 6:20-cv-00322 |
| Plaintiff, | FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT |
| v. | |
| REGIONS FINANCIAL CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Estech Systems, Inc. ("Estech" or "Plaintiff") files this first amended complaint against Regions Financial Corporation ("Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**PARTIES**

1.      Estech Systems, Inc., is a corporation filed under the laws of the State of Texas, with its principal place of business at 3701 East Plano Parkway, Suite 100, Plano, Texas 75074.

2.      Defendant is a Delaware corporation with a principal place of business at 1900 Fifth Avenue North, Birmingham, AL 35203. Defendant's registered agent for service is Corporation Service Company dba CSC-Lawyers Incorporating Service Company, at 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

**JURISDICTION AND VENUE**

3.      Estech repeats and re-alleges the allegations in Paragraphs 1-2 as though fully set forth in their entirety.

4.      This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(c).

6.      Defendant is subject to this Court's specific and general personal jurisdiction due at least to Defendant's substantial business in this forum, including (i) at least a portion of the infringements alleged herein; or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

7.      Specifically, Defendant intends to and does business in Texas, directly or through intermediaries and offers its products or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Western District of Texas.

8.      Defendant maintains a regular and established place of business in this district, including at 4314 West Braker Lane, Austin, TX 78759.

**THE TECHNOLOGY**

9.      Estech repeats and re-alleges the allegations in Paragraphs 1-8 as though fully set forth in their entirety.

10.      For more than 30 years, Estech has been a leading U.S.-based provider of end-to-end business phone solutions.  Estech's Network Operations Center is located in Plano, Texas.

11.      Since 1987, Estech has sold more than 400,000 solutions to its customers, working with more than 1500 certified partners nationwide.  Its customers include small and large businesses across the country.

12.     Recognizing that business doesn't get done without communication, Estech provides powerful products that that are easy and simple to use.  Estech's products are engineered to make intelligent technology that is intuitive and user-friendly, empowers employee productivity, and fuels customer satisfaction.

13.     Estech's technology is American-engineered.  From its Texas headquarters, Estech provides a full solutions portfolio of modern business phone systems, including Cloud, Hybrid, Pure IP, and SIP dial tone products.  Given Estech's end-to-end product offerings, Estech customers are empowered to choose the product features they need and want.

14.     Estech's products include the most integrated cloud PBX in the market—the award-winning ESI Cloud PBX; Voice over IP (VoIP) products and systems; and on-premises products. A cloud-based PBX is a sophisticated telephone exchange system that uses a cloud infrastructure to provide communication services, such as telephony services.

15.     VoIP transmits and receives voice communications over data networks, such as the Internet or private networks, using the Internet Protocol (IP).

16.     VoIP systems offer several advantages over traditional phone systems including, but not limited to, lower cost and more efficient network management.

17.     VoIP systems also allow enable integration of additional communication services.

18.     Estech cloud-based VoIP products have handled billions of call minutes.

19.     Estech also provides U.S.-based, best-in-class technical support for its customers.

20.     The patents-in-suit, U.S. Patent Nos. 8,391,298 (the "'298 patent"), 7,068,684 (the "'684 patent"), 6,067,349 (the "'349 patent"), and 7,123,699 (the "'699 patent") (collectively, the "Asserted Patents"), are generally directed to systems and methods for providing robust, feature-

rich communications systems including, but not limited to, VoIP telephony and additional communication services that can be integrated with a VoIP telephony system.

## THE ACCUSED INSTRUMENTALITIES

21.     Estech repeats and re-alleges the allegations in Paragraphs 1-22 as though fully set forth in their entirety.

22.     On information and belief, Defendant has created, configured, owns, or operates a custom communication system that employs VoIP to perform various functions using multiple components supplied by Defendant or third parties, including, but not limited to, voice calling, voicemail, directory services, quality of service, and others.   Defendant's custom communication system does not have a particular system name or descriptor that can identify it in a manner more particular than identifying its components, features, functions, and services, as Estech has done in this paragraph and the following paragraphs.   It is not surprising that Defendant's custom communication system does not have a particular system name or descriptor because it is not a product that Defendant sells to the public, nor is it a product that Defendant purchased off the shelf.   It is Defendant's internal, custom communication system.

### "Network Components" of Defendant's Custom Communication System

23.     Upon information and belief, Defendant's custom communication system provides networking equipment that allow Defendant to establish first, second, and third local area networks (LANs).   This networking equipment includes, but is not limited to, for example, hubs, switches, routers, and servers that provide LANs for its networking infrastructure and the like.   This networking equipment also, couples the LANs (and devices connected thereto) with a Wide Area Network (WAN), including, but not limited to, for example, the Internet or virtual private network (VPN) connection(s).

4

"VoIP Telephony Devices" of Defendant's Custom Communication System

24.     Upon information and belief, Defendant's custom communication system provides VoIP telephony devices that, through Defendant's Network Components, allow Defendant to make and receive VoIP-based voice calls.  VoIP telephony devices include, but not limited to, for example, devices, software, or applications that provide use or access to VoIP functionality, including, but not limited to, for example, voice calling, voicemail, or Directory Services.  VoIP Telephony Devices may include, but are not limited to, for example, VoIP phones, software-based VoIP phones, desktop and mobile applications that provide VoIP functionality, and web-based applications that allow a user to use or access VoIP functionality.

25.     Upon information and belief, the VoIP Telephony Devices include, but are not limited to, for example, the Cisco VoIP Phones, Polycom VoIP Phones, Avaya VoIP Phones, and the like.

"VoIP Servers" of Defendant's Custom Communication System

26.     Upon information and belief, Defendant's custom communication system employs servers to provide VoIP functionality, including, but not limited to, for example, voice calling, voicemail, or Directory Services.  The servers provide at least one or more of the following functionalities:  (i) the ability to make VoIP-based voice calls using its VoIP Telephony Devices; (ii) the ability to store voice mail messages; (iii) the ability to allow access to the voice mail messages using VoIP Telephony Devices; and (iv) the ability to provide Directory Services, which include, but are not limited to, for example, providing directory information to a user or VoIP Telephony Device, including, but not limited to, for example, providing a list of telecommunications extensions through VoIP Telephony Devices.

27.     Upon information and belief, the VoIP Servers include, but are not limited to, for example, hardware and software components (including, but not limited to, cloud-based components) that provide the VoIP functionality described in paragraph 26.  Such hardware and software components may include, but are not limited to, systems, services, or software provided by ICG Communications (a/k/a Telecommunications Source Group, Inc.), Foremost Telecommunications, Logix Communications Corporation, and Grande Communications Networks, Inc. among others.

28.     When the Complaint references "Accused Instrumentalities" it is referring to the Custom Communication System as described paragraphs 22-28.  When used in the Complaint, "Network Components," "VoIP Telephony Devices," and "VoIP Servers" refer to the information provided in paragraphs 23-28 of the Complaint, respectively.

## COUNT I

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,391,298

29.     Estech repeats and re-alleges the allegations in Paragraphs 1-28 as though fully set forth in their entirety.

30.     Estech owns all substantial rights, interest, and title in and to the '298 patent, including the sole and exclusive right to prosecute this action and enforce the '298 patent against infringers, and to collect damages for all relevant times.  The United States Patent and Trademark Office duly issued the '298 patent on March 5, 2013.  A copy of the '298 patent is attached as Exhibit A.

31.     The '298 patent is titled "Phone Directory in a Voice Over IP Telephone System." The '298 patent describes information processing systems that store a list of phone numbers, integrated with a VoIP telephony system, to provide those phone numbers to the user of a VoIP

telephone.  The user can use that list to dial the telephone number of another user associated with the VoIP telephony system.

32.     The claims of the '298 patent are not directed to an abstract idea.  For example, claim 1 of the '298 patent recites a specific arrangement of devices and networking components. Together those devices and networking components enable a user of a first telecommunications device to observe a list of a plurality of telecommunications extensions.  The list of extensions is stored in a server within a specific networking configuration, and the user can select to view a subset of the extensions.  Taken as a whole, the claimed inventions of the '298 patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the functioning and operation of information processing systems.

33.     The written description of the '298 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

34.     Defendant has infringed the '298 patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

35.     The Accused Instrumentalities include Network Components that provide VoIP-based voice calling and data-networking services to VoIP Telephony Devices.

36.     The Accused Instrumentalities provide first, second, and third LANs that are coupled with a WAN through the Network Components.

37.      The Accused Instrumentalities include VoIP Telephony Devices connected to LANs, the VoIP Telephony Devices having telecommunications extensions associated therewith, the telecommunications extensions being coupled to the second and third LANs.

38.      The VoIP Telephony Devices include circuitry that:  (i) enabling users of VoIP Telephony Devices to observe a list of telecommunications extensions; (ii) automatically call one of the telecommunications extensions in response to a user selecting one of the telecommunications extensions from the list; and (iii) enabling the use to select between observing the list of telecommunications extensions coupled to the second LAN or the third LAN.

39.      The Accused Instrumentalities include VoIP Servers in the second LAN that store telecommunications extensions and accessed across the WAN.

40.      As described above, Defendant has directly infringed (literally or under the doctrine of equivalents) at least Claim 1 of the '298 patent.  Defendant's infringement in this regard is ongoing.

41.      Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

42.      Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '298 patent.

43.      Defendant has also indirectly infringed the '298 patent by inducing others to directly infringe the '298 patent.  Defendant has induced end-users, including Defendant's personnel and contractors, to directly infringe (literally or under the doctrine of equivalents) the

'298 patent by making and using the Accused Instrumentalities. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '298 patent, including, for example, Claim 1 of the '298 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '298 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Instrumentalities by others would infringe the '298 patent. Defendant's inducement is ongoing.

44.    Defendant has also indirectly infringed by contributing to the infringement of the '298 patent. Defendant has contributed to the direct infringement of the '298 patent by its personnel, contractors, and suppliers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '298 patent, including, for example, Claim 1 of the '298 patent. The special features include, for example, the devices and networking components recited in Claim 1, including the interrelation between those devices and networking components, that allow the claimed server to provide a list of extensions and for the user to select to view a subset of the extensions. The special features constitute a material part of the invention of one or more of the claims of the '298 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

45.     Defendant has knowledge of the '298 patent at least as of the date when it was notified of the filing of this action.

46.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

47.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

48.     Defendant's direct and indirect infringement of the '298 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

49.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

50.     Estech has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Estech has and will continue to suffer this harm by virtue of Defendant's infringement of the '298 patent.  Defendant's actions have interfered with and will interfere with Estech's ability to license technology.  The balance of hardships favors Estech's ability to commercialize its own ideas and technology.  The public interest in allowing Estech to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,068,684

51.     Estech repeats and re-alleges the allegations in Paragraphs 1-50 as though fully set forth in their entirety.

52.     Estech owns all substantial rights, interest, and title in and to the '684 patent, including the sole and exclusive right to prosecute this action and enforce the '684 patent against infringers, and to collect damages for all relevant times.  The United States Patent and Trademark Office duly issued the '684 patent on June 27, 2006.  A copy of the '684 patent is attached as Exhibit B.

53.     The '684 patent is titled "Quality of Service in a Voice Over IP Telephone System." The '684 patent describes information processing systems used to transmit voice using VoIP technology.  A VoIP telephone is used to throttle the amount of data being transferred from a workstation connected to the VoIP telephone.

54.     The claims of the '684 patent are not directed to an abstract idea.  For example, claim 36 of the '684 patent recites specific steps performed by a specific arrangement of devices and networking components and operations performed by those components.  Together, those devices and networking components provide quality of service to audio information by throttling the amount of data being transferred through a VoIP telephony device.  Taken as a whole, the claimed inventions of the '684 patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of information processing systems.

55.     The written description of the '684 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how

the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

56.     Defendant has infringed the '684 patent by making, having made using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

57.     The Accused Instrumentalities include Network Components that provide VoIP-based voice calling and data-networking services to VoIP Telephony Devices.

58.     The Accused Instrumentalities include VoIP Telephony Devices that are coupled to Network Components.

59.     The Accused Instrumentalities include VoIP Servers connected to Network Components such that audio information for VoIP-based voice calls is communicated between at least VoIP Telephony Devices and VoIP Servers.

60.     The Accused Instrumentalities include workstations (including, but not limited to, for example, desktop computers, workstations, laptops, embedded devices, point-of-sale devices, and mobile devices) that send and receive data from data servers (including, but not limited to, for example, websites) that are coupled to Network Components through VoIP Telephony Devices.

61.     The Accused Instrumentalities sufficiently throttle data sent from workstations to VoIP Telephony Devices to increase a rate of transfer of audio information during the communication of audio information, the data throttling comprises the step of reducing a future amount of data from being transferred from the workstation if the amount of data exceeds a predetermined threshold.

62.      As described above, Defendant has directly infringed (literally or under the doctrine of equivalents) at least Claim 36 of the '684 patent.  Defendant's infringement in this regard is ongoing.

63.      Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

64.      Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '684 Patent.

65.      Defendant has also indirectly infringed the '684 patent by inducing others to directly infringe the '684 patent.  Defendant has induced end-users, including Defendant's personnel and contractors, to directly infringe (literally or under the doctrine of equivalents) the '684 patent by making and using the Accused Instrumentalities.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '684 patent, including, for example, Claim 36 of the '684 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '684 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary

use of the Accused Instrumentalities by others would infringe the '684 patent. Defendant's inducement is ongoing.

66.     Defendant has also indirectly infringed by contributing to the infringement of the '684 patent. Defendant has contributed to the direct infringement of the '684 patent by its personnel, contractors, and suppliers. The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '684 patent, including, for example, Claim 36 of the '684 patent. The special features include, for example, the devices and networking components recited in Claim 36, including the interrelation between those devices and networking components, that throttle the amount of data being transferred through the telephone. The special features constitute a material part of the invention of one or more of the claims of the '684 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

67.     Defendant has knowledge of the '684 patent at least as of the date when it was notified of the filing of this action.

68.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

69.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

70.     Defendant's direct and indirect infringement of the '684 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

71.        Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

72.        Estech has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Estech has and will continue to suffer this harm by virtue of Defendant's infringement of the '684 patent.  Defendant's actions have interfered with and will interfere with Estech's ability to license technology.  The balance of hardships favors Estech's ability to commercialize its own ideas and technology.  The public interest in allowing Estech to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT III**

**DIRECT INFRINGEMENT OF U.S. PATENT NO. 6,067,349**

73.        Estech repeats and re-alleges the allegations in Paragraphs 1-72 as though fully set forth in their entirety.

74.        Estech owns all substantial rights, interest, and title in and to the '349 patent, including the sole and exclusive right to prosecute this action and enforce the '349 patent against infringers, and to collect damages for all relevant times.  The United States Patent and Trademark Office duly issued the '349 patent on May 23, 2000.  A copy of the '349 patent is attached as Exhibit C.

75.        The '349 Patent is titled "Dialing Using Caller ID."  The '349 patent describes a telephone and voice mail system.  When a calling party calls a user of the system, the system receives the caller's caller ID information and associates that information with a voicemail

message.  By doing so, the recipient of the voicemail can automatically call back the caller while listening to the voicemail message.

76.     The claims of the '349 patent are not directed to an abstract idea.  For example, claim 1 of the '349 patent recites specific steps performed on specific components of voice communications.  Taken as a whole, the claimed inventions of the '349 patent are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of telephone and voice mail systems.

77.     The written description of the '349 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

78.     Defendant has infringed the '349 patent by making, having made using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

79.     The Accused Instrumentalities include VoIP Servers that:  (i) receive an incoming call from a calling party over a switched telephone network, wherein the incoming call includes caller ID information, wherein the caller ID information includes a telephone number of the calling party; (ii) connect the incoming call to a voice mailbox; (iii) store the caller ID information in association with the voice mailbox, wherein the voice mailbox is associated with a called party, and wherein the caller ID information is stored in association with a voice message left by the calling party for the called party in the voice mailbox; and (iv) automatically dial the telephone number at a request of the called party while the called party is listening to the voice message.

16

80.     As described above, Defendant has directly infringed (literally or under the doctrine of equivalents) at least Claim 1 of the '349 patent.  Defendant's infringement in this regard is ongoing.

81.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

82.     Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '349 Patent.

83.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,123,699

84.     Estech repeats and re-alleges the allegations in Paragraphs 1-83 as though fully set forth in their entirety.

85.     Estech owns all substantial rights, interest, and title in and to the '699 patent, including the sole and exclusive right to prosecute this action and enforce the '699 patent against infringers, and to collect damages for all relevant times.  The United States Patent and Trademark Office duly issued the '699 patent on October 17, 2006.  A copy of the '699 patent is attached as Exhibit D.

86.     The '699 patent is titled "Voice Mail in a Voice Over IP Telephone System."  The '699 patent describes a VoIP telecommunications system for storing a voice mail message in a voice mail box in a voice mail system within a first local area network (LAN).  A user can access and listen to the voice mail using a telecommunications within a second LAN by connecting to the first LAN via a wide-area network (WAN), such as the Internet.

87.     The claims of the '699 patent are not directed to an abstract idea.  For example, claim 1 of the '699 patent recites a specific arrangement of devices in a networking environment.  Together those devices enable a user within a second LAN to access and listen to voice mail messages stored within a first LAN.  Taken as a whole, the claimed inventions of the '699 patent are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the functioning and operation of information processing systems.

88.     The written description of the '699 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

89.     Defendant has infringed the '699 patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Instrumentalities for sale.

90.     The Accused Instrumentalities include Network Components that provide first and second LANs that are coupled with a WAN, operating under a routable protocol including, but not limited to, for example, TCP/IP or UDP/IP.

91.      The Accused Instrumentalities include VoIP Servers that store a voice mail message in a voice mail box in a voice mail system within a first LAN.

92.      The Accused Instrumentalities include VoIP Telephony Devices coupled to the second LAN that provide a sensory indication when the voice message is stored in the voice mail box within the first LAN.  The VoIP Telephony Devices allow a user to access the voice mail system within the first LAN to listen to the voice message stored in the voice mail box.  The VoIP Telephony Devices allow a user to access the voice mail message stored in the voice mail box provided by the VoIP Servers by using communication protocols, including, but not limited to, for example, TCP/IP, UDP/IP, Session Initiation Protocol (SIP), Session Description Protocol (SDP), Real-time Transport Protocol (RTP), and Real-time Transport Control Protocol (RTCP) protocols to:  (i) establish a channel between the first and second LANs over the WAN; (ii) couple an audio path over the channel between the telecommunications device and the voice mail box; and (iii) stream voice data containing the voice message from the voice mail box to the telecommunications device over the audio path.

93.      The VoIP Telephony Devices and VoIP Servers can establish a channel between the first and second LANs over the WAN, wherein the establishing includes:  (i) in response to an input at VoIP Telephony Devices, sending a user mail box connection message from the second LAN to the first LAN requesting a channel, wherein the user mail box connection message includes an extension associated with VoIP Telephony Devices and an identification of the voice mail box; (ii) assigning the channel by VoIP Servers in the first LAN; and (iii) sending a connection established message from VoIP Servers in the first LAN to the second LAN.

94.     As described above, Defendant has directly infringed (literally or under the doctrine of equivalents) at least Claim 1 of the '699 patent.  Defendant's infringement in this regard is ongoing.

95.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

96.     Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '699 patent.

97.     Defendant has also indirectly infringed the '699 patent by inducing others to directly infringe the '699 patent.  Defendant has induced end-users, including Defendant's personnel and contractors, to directly infringe (literally or under the doctrine of equivalents) the '699 patent by making and using the Accused Instrumentalities.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Instrumentalities in a manner that infringes one or more claims of the '699 patent, including, for example, Claim 1 of the '699 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors or end-users to make or use the Accused Instrumentalities in an infringing manner; advertising and promoting the use of the Accused Instrumentalities in an infringing manner; or distributing instructions that guide users to use the Accused Instrumentalities in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '699 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary

use of the Accused Instrumentalities by others would infringe the '699 patent.  Defendant's inducement is ongoing.

98.      Defendant has also indirectly infringed by contributing to the infringement of the '699 patent.  Defendant has contributed to the direct infringement of the '699 patent by its personnel, contractors, and suppliers.  The Accused Instrumentalities have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '699 patent, including, for example, Claim 1 of the '699 patent.  The special features include, for example, the devices and networking components recited in Claim 1, including the interrelation between those devices and networking components, that allow a user to access and listen to the voice mail using a telecommunications within a second LAN by connecting to the first LAN via a wide-area network (WAN), such as the Internet.  The special features constitute a material part of the invention of one or more of the claims of the '699 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

99.      Defendant has knowledge of the '699 patent at least as of the date when it was notified of the filing of this action.

100.      Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

101.      Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

102.     Defendant's direct and indirect infringement of the '699 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

103.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Estech in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

104.     Estech has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Estech has and will continue to suffer this harm by virtue of Defendant's infringement of the '699 patent.  Defendant's actions have interfered with and will interfere with Estech's ability to license technology.  The balance of hardships favors Estech's ability to commercialize its own ideas and technology.  The public interest in allowing Estech to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

Estech Systems, Inc. requests that the Court find in its favor and against Defendant, and that the Court grant Estech the following relief:

a.     Judgment that one or more claims of the Asserted Patents have been infringed, either literally or under the doctrine of equivalents, by Defendant or all others acting in concert therewith;

b.      A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '298, '684, and '699 patents; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

c.      Judgment that Defendant accounts for and pays to Estech all damages to and costs incurred by Estech because of Defendant's infringing activities and other conduct complained of herein;

d.      Judgment that Defendant's infringements be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.      Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.      That this Court declare this an exceptional case and award Estech its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.      All other and further relief as the Court may deem just and proper under the circumstances.

Dated: November 4, 2020            Respectfully submitted,

By: /s/ Fred I. Williams
Fred I. Williams
Texas State Bar No. 00794855
Michael Simons
Texas State Bar No. 24008042
Jonathan L. Hardt
Texas State Bar No. 24039906
Chad Ennis
Texas State Bar No. 24045834
WILLIAMS SIMONS & LANDIS PLLC
327 Congress Ave., Suite 490

23

Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
msimons@wsltrial.com
jhardt@wsltrial.com
cennis@wsltrial.com

Todd E. Landis
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff Estech Systems, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 4, 2020, the undersigned caused a copy of the foregoing document to be served on Defendant through the Court's ECF System.


*/s/ Fred I. Williams*
Fred I. Williams